# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  *Plaintiff*,<br><br>v.<br><br>CONTENTS OF BANK OF AMERICA ACCOUNT ENDING -4621, HELD IN THE NAME OF SHIREBERK INTERNATIONAL, INC.,<br>  *Defendant*.<br><br>[CLAIMANT: SHIREBERK INTERNATIONAL, INC.] | <br><br><br><br><br><br><br><br><br><br>February 3, 2023 |

## VERIFIED COMPLAINT OF FORFEITURE

1. This a civil *in rem* action brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(A) via 18 U.S.C. § 1956(c)(7)(A) for the forfeiture of property which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)), namely wire fraud in violation of 18 U.S.C. § 1343 and/or mail fraud in violation of 18 U.S.C. § 1341, or conspiracy to commit such offenses.

2. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 & 1355. Venue is appropriate in the District of Connecticut by virtue of 28 U.S.C. § 1395(b).

3. The In Rem Defendant is the contents of Bank of America account ending -4621, held in the name of Shireberk International, Inc. ("Bank of America account ending -4621") (the "Defendant Asset").

4. The Defendant Asset is located within the jurisdiction of this Court.

## The Investigation

5. As explained more fully in this verified complaint, CHAMPAGNE acquired an aged shelf corporation, filed a fake tax return, and received the proceeds. CHAMPAGNE engaged in a conspiracy which resulted in U.S. tax return forms being filled out with fake information and numbers based on what they believed would be approved by the IRS, and not based off any real employees, goods, services, or operations, in violation of federal laws.

6. Law enforcement investigated KRISTIAN GUPTA and LYELL CHAMPAGNE, JR., resulting in criminal charges. On or about August 4, 2022, GUPTA and CHAMPAGNE were indicted in the District of Connecticut on charges relating to a scheme to commit bank fraud. *See U.S. v. Gupta, et al.*, 3:22-cv-163 (SVN) (MEG).

7. GUPTA and CHAMPAGNE were released on bond. The Court later revoked CHAMPAGNE's bond in part because of the scheme described herein. *Id*. at docket entries 44, 49, and 51 at pg. 3-4 ("The Government and Probation have presented evidence that while on supervision, Defendant, despite his knowledge that he was being monitored by Probation, brazenly executed the financial transfers and then lied to Probation when asked the activity, under the guise that the transactions were fraudulent, even though the surveillance and text messages to the recipient of the transfers demonstrate otherwise.").

8. Prior to the bond revocation, on or about June 1, 2022, law enforcement conducted a search of CHAMPAGNE's computer and two of his phones pursuant to a search warrant. The devices contained communications and other information relating to a variety of schemes to defraud. At the time, it was not known whether CHAMPAGNE had

successfully executed, or even attempted, any of those schemes (other than the scheme that was the subject of the investigation).

9. Law enforcement interviewed CHAMPAGNE on or about June 27, 2022, in the presence of his counsel. CHAMPAGNE told law enforcement, among other things, the following:

   a. CHAMPAGNE had recently obtained employment at a Target store.

   b. CHAMPAGNE obtained a fraudulent PPP ("Paycheck Protection Program") loan of approximately $187,500 for a company, Techmatic Solutions Inc., using nine employee identities that "Russians provided" to him. CHAMPAGNE transferred a portion of the loan proceeds to Janaiya SAMUELS.

   c. CHAMPAGNE reported that he was involved in an online relationship with SAMUELS.

   d. On at least one occasion, SAMUELS purchased personally identifiable information (PII) and provided the information to CHAMPAGNE. According to CHAMPAGNE, SAMUELS "dabbled in this stuff."

   e. CHAMPAGNE did not make any reference to being the president of Shireberk International Inc., an entity described further below, nor any other business or activity that might give rise to an approximately $3.4 million tax refund.

10. On or about September 12, 2022, law enforcement learned from U.S. Probation that screenshots from monitoring software installed on Champagne's computer showed multiple $300,000 transactions to Janaiya SAMUELS from Bank of America account ending -4621.

11. According to records provided by Bank of America, Bank of America account ending -4621 account was opened in the name of Shireberk International Inc. with "Lyell

Champagne, Jr." listed as the company president on the signature card. On or about July 6, 2022, a U.S. Treasury check in the amount of $3,449,395.00, addressed to Shireberk International Inc. and "Lyell Champagne Jr." at an address in Cheyenne, Wyoming, was deposited into Bank of America account ending -4621. Prior to this deposit, the beginning balance on the statement for the period July 1, 2022, to July 31, 2022, was $410.00.

12. A search of the State of Wyoming business records shows that Shireberk International Inc. was registered in 2013, with the Registered Agent of this address being Corporate Agents, LLC, 1712 Pioneer Ave Ste 100, Cheyenne, WY. An open-source search of this address located the website "corporationstoday.com" that described the business as being located at the aforementioned address, and stated, "We offer fast, friendly, dependable service when it comes to buying aged shelf corporations, aged shelf companies, and incorporation filings. We have aged shelf LLC's, shelf companies, and aged shelf corporations in around 25 states."

13. As a general matter, shelf companies and corporation entities that were created, *i.e.*, articles of incorporation filed, annual reports submitted, and, on occasion, websites established. Outside of this, however, the entities have done nothing; they have not conducted business or even put content on the websites. These companies have no employees or physical locations. They are considered "aged" when these shelf corporations have been in existence for a period of time.

14. On October 5, 2022, the Court authorized a search of three of CHAMPAGNE's phones as well as his computer, which were already in FBI evidence, for records related to the filing of false tax returns, money laundering, and conspiracy, involving LYELL

CHAMPAGNE, JR., JANAIYA SAMUELS, and others known and unknown, giving rise to the deposit of a fraudulently obtained U.S. Treasury check on or about July 6, 2022.

15. A search of one of CHAMPAGNE's phones revealed a WhatsApp chat between CHAMPAGNE and an Unknown Person (UNKP), which included among other things, discussion of buying "aged shelf" and "aged empty" companies, as well as filing tax returns under multiple different business names.  The UNKP prepared taxes for CHAMPAGNE.

16. The messages gave law enforcement information about CHAMPAGNE's and SAMUEL's plan.

17. On or about March 29, 2022, CHAMPAGNE sent UNKP a message which read in part "But I don't think the IRS would look at it very differently like you said C corps can get million dollar refunds no issues. And actually their limit is anything under 5million usd with no JTC review, anything over that is subject to JTC review just like non c corp regular over 2 million is subject".

18. On or about March 31, 2022, CHAMPAGNE sent UNKP a message which read in part "What do you estimate we can get with an aged C corp from Wyoming? I am getting a corporation that is 9 years old, and I know the JTC committee for IRS wont review anything under 5m for tax refund. Whatever your thoughts are brother" and then sent UNKP the message "I should have the corporation by tomorrow or Monday".  UNKP responded to this message "We'll get a good refund from the c corporation".

19. Champagne communicated with UNKP to provide the details to UNKP of the shelf corporation to be used for the fictious tax returns.

20. On or about April 1, 2022, CHAMPAGNE sent UNKP a message which read in part, "BUSINESS INFORMATION: NAME: SHIREBERK INTERNATIONAL, INC EIN:[Redacted] NAICS:531210 DATE OF REGISTRATION: SEPTEMBER, 2015 OWNER NAME:LYELL CHAMPAGNE JR SSN:[Redacted] BUSINESS ADDRESS:1712 PIONEER AVE STE 166, CHEYENNE, WY 82001" and then sent UNKP the message "C Corp" immediately thereafter.[1]

21. On or about April 2, 2022, CHAMPAGNE sent UNKP a message which read in part, "What industry NAICS code do you think is good for this aged corp I have? I put real estate but maybe I should use consulting or something similar? What are your thoughts? Regards".

    a. CHAMPAGNE sent follow up messages to UNKP which read "The new company", "I just acquired today", "C Corp structure", "This will be for tax return refund purposes that is, whatever you think we can get a 7figure refund from", and "And since its in Wyoming, there wont be a need for a state tax return as there is no income tax or state tax that needs to be filed, only federal".

    b. UNKP responded to these messages with "Real estate is good, every activity is good. We just have to go for a lot of deductions and credits. Credits make the refund bigger".

22. A NIACS code, in the context of tax preparation, is a code signifying the type of general industry associated with the filing business. Shireberk International, Inc., mentioned in the prior paragraph, was not engaged in "real estate," or any other business.

---

[1] The bracketed information labeled "redacted" represents redactions made by the Government.

23. On or about April 14, 2022, CHAMPAGNE sent UNKP a message that read in part, "And for 2019 and 2020 we can file after the deadline so that way you arent stressing as much? Or will that cause more delay for processing? I know getting 2018 filed is important and we will efile this weekend for 2021".

    a. UNKP responded by stating "Sorry for the little delay my friend. I'll deliver you the taxes for 2018, 2019, and 2020 in the next 15 hours".

    b. CHAMPAGNE responded by stating "You are fine my friend, I appreciate you working ever so hard and speedy on those brother. I am assuming you already found more credits to add up to 5m per year. Thank you, inshallah, we will make things happen this year" and then also said "And we can take our time efiling this weekend, but I can mail off the taxes tomorrow when delivered".

24. On or about April 15 and 16, 2022, UNKP sent CHAMPAGNE prepared Form 1120 US Corporation Income Tax Returns for 2018, 2019, and 2020, in the name of SHIREBERK INTERNATIONAL, INC., 1712 PIONEER AVE STE 166, CHEYENNE, WY 82001, with the business activity being listed on all of the returns as "real estate". While sending these returns to CHAMPANE, UNKP sent messages "3.9m is the refund for 2018", "2019 refund: 4,163,302", and "2020 refund: 3,695,708".

25. Law enforcement also reviewed an extensive series of iMessages between CHAMPAGNE and SAMUELS that was contained on one of CHAMPAGNE's phones.

26. On or about March 31, 2022, CHAMPAGNE sent SAMUELS a message which read in part "Hey baby Bug! Just about 30 mins ago I started the purchase on the new aged corp, so that we can get a refund. I spoke with the private boa rep and he will update me tomorrow, supposedly we can get that approved in a few days. This cow played games

today, asked me questions for her 'committee' and still didn't finish finalizing. Definitely not good business, once I get the feature enabled on the BoA, hopefully extremely soon as promised, I won't even entertain that bank. Wells Fargo says they are starting on their process now so I can't expect anything on their end until end of April beginning of March. I'm waiting for our accountant to come online soon, I should be getting the new aged corp by tomorrow or Monday at the latest. This one is 10 years old! Were you able to pay harmony earlier without any issues dear?"

27. On or about April 4, 2022, CHAMPAGNE sent SAMUELS a message which read in part "There's my sugar cake! Had you on my mind all Damn weekend and this morning! How's my baby Bug? I'm having account work on a big refund for this new aged corp I got for us on Friday, this one is 10 years old next year!"

28. On or about April 4, 2022, SAMUELS sent CHAMPAGNE a message which read in part "Did the taxes come from the normal aged? Not yet?"

29. On or about April 8, 2022, CHAMPAGNE sent SAMUELS a message which read in part "Yes baby I'm glad I came thru for you at the right time. You'll be more than ok once our accountant is finished with these new biz tax returns. He's working diligently, going to try to get us just under 5m. I'm doing ok my love, just trying to get us our monies. So we can be living our best life and be back in Cali permanently."

   a. SAMUELS responded to this message, in part, "And the other taxes are still processing? Yes, live our best life in Cali!"

   b. CHAMPAGNE then responded by stating, in part, "Yes those are processing, the paper ones are for prior years. Those will take some months to see a refund, or not. I know the last time it took a while. However, we will have this new aged

corp eFiled for 2021 for something super close to 5m in refund, the other years will have millions as well but that will be on the back burner until the slow irs does their jobs. Then we also will have the grant to look forward to starting in June for another 5m."

30. On or about May 24, 2022, SAMUELS sent CHAMAPGNE a message which read in part "We don't have bank statements already? I thought we would given all of the work for the aged corp thus far. Ok that sounds good. Any more options for personal or biz loans? Biz loans that don't require connecting of bank account?"

31. CHAMPAGNE responded to this and other messages by stating, in part, "I haven't had to provide any statements for the aged corp since I have no activity on Bank of America. That's why I need to get some made. I only have 1 month that I have made but I want it to be more believable with real estate/property management transactions since that's the biz industry."

32. On or about May 25, 2022, CHAMPAGNE sent SAMUELS a message which read in part "Imma need you to refresh your eyes and use your fresh eyes for this right here I'm about to show you. Is my Bug with me or is she sleepy Bug?"

   a. SAMUELS responded by stating "I'm with you!!! Refreshing these eyes!!"

   b. CHAMPAGNE sent SAMUELS a photograph of a letter from the US Department of the Treasury, IRS, addressed to SHIREBERK INTERNATIONAL INC, SHIREBERK, 1712 Pioneer Ave Ste 166, CHEYENNE, WY, which read in part, "Message about your December 31, 2020 Form 1120," and "Your refund check will be sent by mail."

    c. CHAMAPGNE then sent follow-up messages which read, in part "For the big checks love, the new aged corp. so instead of giving DD for 2021 they'll send us a check. The letter just came on Monday and I forwarded to myself to receive it today. Fingers crossed".

    d. SAMUELS responded, "Not the 74k?" and "I cannot follow anymore lol".

    e. CHAMPAGNE responded "I sent an emergency tax advocacy fax request for the 74k today. That's the first aged corp. The new one is where we are expecting 16m+ in total refund checks. This letter about the 2021 refund is for 4.4m. Is my Bug found now or is she still sleepy and lost?"

    f. SAMUELS then sent a message which read "Lmaoooo I'm with you baby. They lost 74k but not the 4.4M lol".

### The Investigation Into The Fraudulently Obtained Money

33. The IRS sent CHAMPAGNE, via Shirebrook, a tax refund in the amount of $3,449,395.00. The check was dated May 24, 2022, which was *one day prior* to the conversation via text between Champagne and Samuels set forth in paragraph 32 and its subparts.

34. CHAMPAGNE deposited this check on July 6, 2022, into Bank of America account ending -4621, held in the Shireberk International, Inc. CHAMPAGNE was the original signatory to the account, but SAMUELS was later added to the account with a limited access.

35. According to records provided by Bank of America, starting on or about August 25, 2022, approximately six transactions of $300,000 each, totaling approximately $1,800,000, were transferred from Bank of America account ending -4621 to Betterment

LLC account ending -5115, Betterment ID 1689539, held in the name of Janaiya Samuels ("Betterment LLC account ending -5115"). The transactions continued through August 31, 2022.

36. Betterment LLC account ending -5115, received the transfers from Bank of America account ending -4621, including an additional $300,000 transfer, for a total of $2,100,000 received. Prior to this deposit, the beginning balance on Betterment LLC account ending -5115, for the period August 1, 2022, to August 31, 2022, was $505.52 in Cash Reserve, $0.00 in Education, $0.00 in General Investing, and $0.00 in Major Purchase.

37. On or about September 7, 2022, SAMUELS transferred approximately $1,896,000 from Betterment LLC account ending -5115, to an account at PNC Bank Account ending -0829, held in the Janaiya Samuels.

38. According to records provided by PNC Bank, PNC Bank account ending -0829 received a $1,896,000 deposit from Betterment LLC account ending -5115, on or about September 13, 2022. Prior to this deposit, the beginning balance on the statement for the period August 29, 2022 to September 19, 2022, was $0.00.

39. After the deposit, SAMUELS made several Banking Withdrawals, Debit Card Purchases, and other Deductions, totaling approximately $81,512.86.

40. On or about September 14, 2022, SAMUELS transferred $100,000.00 from the PNC Bank account ending -0829 to TD Ameritrade account ending -7275, held in the name of Janaiya Samuels ("TD Ameritrade account ending -7275").

41. According to records provided by Charles Schwab / TD Ameritrade, TD Ameritrade account ending -7275, received a $100,000.00 deposit on or about September 14, 2022. Prior to this deposit, the beginning balance on the statement for the period September 1,

2022, to September 30, 2022, was a negative balance of approximately $4,482.42 in cash activity, a positive balance of approximately $21,422.02 in stocks, and a positive balance of approximately $299.13 in mutual funds. After the deposit, SAMUELS made a series of Securities Purchases.

42. On or about September 28, 2022, according to information provided by Betterment, CHAMPAGNE submitted a claim that certain transfers from Bank of America account ending -4621 had been fraudulent. Specifically, Betterment told law enforcement that the ACH transfers were returned under code R10, which according to NACHA, the administrator of the ACH Network, defines as "Customer Advises Originator is Not Known to Receiver and/or Originator is Not Authorized by Receiver to Debit Receiver's Account," and says this code is used when "Receiver does not know the identity of the Originator," "Receiver has no relationship with the Originator," or when "Receiver has not authorized the Originator to debit the account." Betterment provided a summary of the original ACH transfers it received from Bank of America account ending -4621 and later returned to the same:

   a. 8/25/22: $300,000 deposited, returned on 9/28/22
   b. 8/25/22: $300,000 deposited, returned on 9/28/22
   c. 8/26/22: $300,000 deposited, returned on 9/28/22
   d. 8/29/22: $300,000 deposited, returned on 9/28/22
   e. 8/30/22: $300,000 deposited, returned on 9/28/22
   f. 8/31/22: $300,000 deposited (not returned)
   g. 9/01/22: $300,000 deposited, returned on 9/28/22

43. Pursuant to the ACH rules, Betterment "returned" the above money to Bank of America even though the money that had been deposited into Betterment had already been transferred to PNC. Because the money had already been transferred, when Betterment returned the money, it repaid Bank of America from its corporate account(s).

44. Betterment then, in turn, requested the money from PNC. At the time of the request from Betterment, however, the PNC account had been frozen at the request of law enforcement.

45. In conjunction with law enforcement, on November 3, 2022, PNC Bank account ending -0829 was unfrozen and PNC honored Betterment's request, leaving PNC Bank account ending -0829 with a zero balance.

46. Pursuant to seizure warrants authorized by Magistrate Judge Maria E. Garcia, the United States seized the Defendant Assets.

    a. After PNC Bank honored Betterment's request, Betterment LLC account ending -5115, had a balance of approximately $69,187.32. This balance represented the remaining money after Betterment had recouped the money it paid to Bank of America following the Bank of America request.[2]

    b. The balance in Bank of America account ending -4621 was approximately $3,149,775.05.

    c. The balance in TD Ameritrade account ending -7275 was approximately $118,694.11.[3]

---

[2] The contents of this account were administratively forfeited.

[3] The contents of this account were administratively forfeited.

**Conclusion**

47. Based on the above information, it is believed that the Defendant Asset constituted the proceeds of violations of 18 U.S.C. § 1343 (wire fraud), and/or proceeds of violation of 18 U.S.C. § 1341 (mail fraud); and are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) for the forfeiture of property which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)), namely wire fraud in violation of 18 U.S.C. § 1343 and/or mail fraud in violation of 18 U.S.C. § 1341, or conspiracy to commit such offenses.

Wherefore, the United States of America prays that a Warrant of Arrest In Rem be issued for the Defendant Asset; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

The United States requests trial by jury.

                                          VANESSA ROBERTS AVERY,
                                          UNITED STATES ATTORNEY

By:   /S/ David C. Nelson
        David C. Nelson (ct25640)
        Assistant U.S. Attorney
        157 Church Street, 24th Floor
        New Haven, Connecticut 06510
        Tel:   (203) 821-3700
        Fax:   (203) 773-5373
        David.C.Nelson@usdoj.gov

## **DECLARATION**

I am a Special Agent with the Federal Bureau of Investigation, United States Department of Justice, and the individual assigned the responsibility for this case.

I have read the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 3rd day of February, 2023.

*/s/ Joshua Young*
JOSHUA YOUNG
SPECIAL AGENT, FBI